IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 12-10520

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 12, 2013

Lyle W. Cayce
Clerk

FEDERAL TRADE COMMISSION,

                Plaintiff - Appellant

v.

FINANCIAL FREEDOM PROCESSING, INCORPORATED, a corporation, formerly known as Financial Freedom of America, Incorporated; COREY BUTCHER, Individually and as an Officer of the Corporation; BRENT BUTCHER, Individually and as an Officer of the Corporation

                Defendants - Appellees

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

FEDERAL TRADE COMMISSION,

                Plaintiff - Appellant

v.

DEBT CONSULTANTS OF AMERICA, INCORPORATED; DEBT PROFES-SIONALS OF AMERICA, INCORPORATED; ROBERT CREEL, Individually and as an Officer of the Corporations; COREY BUTCHER, Individually and as an Officer of the Corporations; NIKKI CREEL, Individually and as an Officer of the Corporations, also known as Nikki Vrla

                Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:10-CV-2447 (consol. with 3:10-CV-2446).

Before STEWART, Chief Judge, HIGGINBOTHAM and JONES, Circuit Judges.
PATRICK E. HIGGINBOTHAM, Circuit Judge:[*]

In 2010, the FTC sued three debt-negotiation companies — Financial Freedom of America, Inc., Debt Consultants of America, Inc., and Debt Professionals of America, Inc. ("the Companies") — as well as five of the individuals who owned or controlled them. According to the FTC, the defendants violated § 5 of the FTC Act by deceptively claiming, in radio ads, on their websites, and in sales calls, that the Companies could eliminate 30 to 60% of consumers' credit card debt in as little as 18 to 36 months.[1] At trial, the defendants argued that the claims were perfectly accurate as interpreted by a reasonable consumer, who would have understood that (1) the advertised debt reduction excluded the Companies' fees and (2) the advertised debt reduction and timing excluded clients who dropped out of the programs. To support their interpretation of the claims, the defendants relied heavily on the Companies' disclosures in sales calls and enrollment agreements — disclosures made at or shortly before the point of purchase. The district court agreed that § 5 deception should be evaluated on the basis of all information the Companies disclosed to consumers up to the point of purchase. Based on this conclusion, it adopted the defendants' interpretation of the claims and entered judgment in their favor.

The district court's § 5 analysis is dubious. The Companies deployed a marketing campaign that utilized a variety of media and involved a series of discrete communications with consumers. Circuits to apply § 5 in such circumstances have concluded that "the law is violated if the first contact is

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] As relevant here, § 5 prohibits "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(1). The FTC brought suit under § 13(b). *See* 15 U.S.C. § 53(b).

secured by deception, even though the true facts are made known to the buyer before he enters into the contract of purchase."[2] That is, "each advertisement must stand on its own merits; even if other advertisements contain accurate, non-deceptive claims, a violation may occur with respect to the deceptive ads."[3] Hence, there is an argument with considerable purchase that the district court erred by considering not only the content of individual radio ads and websites (the Companies' "first contact" with consumers), but also critical disclosures made only when consumers arrived at the bargaining table.[4]

The FTC, however, did not clearly challenge the district court's § 5 analysis on this ground in its briefs or during oral argument — despite pointed questioning. Rather, it chose to challenge the district court's factual determination that reasonable consumers at the point of purchase would have interpreted the Companies' debt-reduction and timing claims in a non-deceptive manner. The FTC's attempt to characterize this assessment of consumer perceptions as a legal conclusion is unavailing; we review such findings only for clear error.[5] And while the Companies' radio ads and websites may be

---

[2] *Exposition Press, Inc. v. FTC*, 295 F.2d 869, 873 (2d Cir. 1961) (quoting *Carter Prods., Inc. v. FTC*, 186 F.2d 821, 824 (7th Cir. 1951)); *see also Resort Car Rental Sys., Inc. v. FTC*, 518 F.2d 962, 964 (9th Cir. 1975) ("[Section 5] is violated if it induces the first contact through deception, even if the buyer later becomes fully informed before entering the contract.").

[3] *Removatron Intern. Corp. v. FTC*, 884 F.2d 1489, 1496–97 (1st Cir. 1989); *see also FTC v. Medical Billers Network, Inc.*, 543 F. Supp. 2d 283, 304 (S.D.N.Y. 2008) ("[E]ach representation must stand on its own merit, even if other representations contain accurate, non-deceptive information."); *FTC v. Gill*, 71 F. Supp. 2d 1030, 1044 (C.D. Cal. 1999) (same).

[4] Had the FTC persuaded us that the district court applied an incorrect legal standard, we would have been obliged to review the evidence *de novo*. *See, e.g.*, *Fuji Photo Film Co., Inc. v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591 (5th Cir. 1985).

[5] *See, e.g.*, *Beneficial Corp. v. FTC*, 542 F.2d 611, 617 (3d Cir. 1976) ("Whether particular advertising has a tendency to deceive or mislead is obviously an impressionistic determination more closely akin to a finding of fact than to a conclusion of law."); *Giant Food, Inc. v. FTC*, 322 F.2d 977, 982 n.12 (D.C. Cir. 1963) ("The meaning of advertisements or other representations to the public, and their tendency or capacity to mislead or deceive, are questions of fact . . . .").

misleading[6] — indeed, it is difficult to conclude that the websites are not deceptive[7] — we are satisfied that substantial evidence supports the district court's finding that reasonable consumers were no longer deceived at the point of purchase. The judgment of the district court is AFFIRMED.

---

[6] For example, even accepting that a reasonable consumer exposed to the Companies' radio ads would have understood that the advertised debt reduction and timing excluded dropouts, the ads may have nonetheless been deceptive because they failed to disclose the *likelihood* of dropping out (and affirmatively fostered the misimpression that participation would be painless). *See FTC v. Stefanchik*, 559 F.3d 924, 928 (9th Cir. 2009) (noting that a material omission may violate § 5). Though the district court recognized this possibility during closing arguments, its concerns were apparently assuaged by the fact that the Companies disclosed the many of the risks of participation in their sales calls and enrollment agreements.

[7] Whereas the radio ads merely failed to disclose the Companies' high dropout rate, *see supra* note 6, two of the Companies' websites affirmatively misrepresented it, claiming that "the majority of our *clients* complete the programs in 18–36 months." (emphasis added.) This language clearly and unambiguously conveys that a majority of consumers who *enroll* in the programs (*i.e.*, "clients") successfully complete the programs within 18 to 36 months; however, the evidence establishes that at most 24% of enrolled clients competed the programs.

EDITH H. JONES, Circuit Judge, concurring:

    I concur in my colleagues' rationale that the district court's findings of fact are not clearly erroneous but I am not so sure the district court misapplied the law, had FTC properly raised that issue. I concur in the judgment.